UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>V.<br><br>WILLIAM S. EVANS, III.,<br>    Defendant. | CRIMINAL NO. 5:20-127-KKC<br><br><br>**OPINION AND ORDER** |

**\*\*\* \*\*\* \*\*\***

On April 30, 2021, the Court held a hearing pursuant to 18 U.S.C. §§ 4241(c) and 4247(d) to assess Defendant William S. Evans' competency to face further proceedings in this case. (*See* DE 57, 58). For the reasons that follow, the Court finds that Evans is currently **competent** to proceed in this matter and will prepare this matter for trial.

### I. Background

Evans was indicted on November 12, 2020 with one count of commodities fraud in violation of 7 U.S.C. §§ 6o(1) and 13(a)(5), and three counts of wire fraud in violation of 18 U.S.C. § 1343. (DE 1). He was arraigned on November 30, 2020. (DE 10). Following the proceeding, counsel requested a competency hearing. (DE 9). The United States did not oppose Evans' request for a competency hearing, but first sought a custodial evaluation of him before proceeding. (DE 24). The Court granted this request. (DE 29). Evans self-reported to the Federal Medical Center (FMC) – Lexington for purposes of the custodial psychological evaluation on January 18, 2021, and was cleared from the facility and all further testing on March 4, 2021.

On or about April 5, 2021, the Court received the BOP examiner's complete Psychological Report. (DE 48). The Court asked the parties whether they intended to present evidence contesting those findings, seek a competency hearing, or whether they had no objection to the Court adopting the examiner's findings. (DE 47). Evans sought a competency hearing (*see* DE 49). The Court scheduled the matter for a hearing on April 30, 2021. (DE 50). At the hearing, Dr. Timothy Allen testified on behalf of Evans, and following the testimony, Dr. Kristen Schramm and Dr. Alberto Espay testified on behalf of the United States. Dr. Allen testified that he found Defendant incompetent to stand trial; Dr. Schramm and Dr. Espay testified to the opposite.

Dr. Allen met with Evans, on October 20, 2020, at the request of counsel. Dr. Allen's conclusion regarding Evans' incompetency to stand trial was informed by this meeting; a review of his medical records and medical imaging scans; fourteen cognitive and psychological tests administered by members of his office[1]: (1) *TOMM*, (2) *VSVT*, (3) *Wide Range Achievement Test, 5th Ed., Word Reading subtest*, (4) *Test of Premorbid Functioning*, (5) *Ruff 2 & 7 Selective Attention Test*, (6) *Brief Test of Attention*, (7) *Controlled Oral Word Association Test*, (8) *Weschler Memory Scale-IV*, (9) *Grooved Pegboard Test*, (10) *Grip Dynanometer,* (11) *Finger Tapping Test*, (12) Wisconsin Card Sorting Test, (13) *Trailmaking Tests A and B*, (14) and the *Wechsler Adult Intelligence Scale-IV* (WAIS); and Dr. Allen's professional experience in conducting over two thousand competency evaluations for the state of Kentucky.

Because Evans was brought to Dr. Allen's office at his attorney's request, Dr. Allen testified that he approached the evaluation of Evans as one of cognitive impairment, the way

---

[1] Dr. Allen's licensed psychological associate, Mary Uber, M.S., administered the cognitive and psychological tests; John Ranseen, Ph.D. "supervised the administration, scoring, summarization, and analysis of the test data." (DE 9-1 at 9).

he does with his other traumatic injury-dementia evaluations. After his staff administered the tests, he reviewed and analyzed the test results; from these, concerns developed regarding Evans' substantially below-average performance on the Ruff 2 & 7 Selective Attention Test, the Brief Test of Attention, parts of the WAIS, and the Trailmaking Part B Test. Dr. Allen testified that these results served as overwhelming evidence that Evans is suffering from dementia, which is why major neurocognitive disorder cannot be ruled out. Further, he stated there might be some evidence of anosognosia in this case, a medical condition in which a person is unaware of the extent of his cognitive deficits.

Apart from evaluating the test results, Dr. Allen stated that he spent approximately 1.5 hours speaking to and interviewing Evans about his educational and professional background; his charges; whether he understood his role in the proceedings; and the role of the legal system, the jury, the judge, and his attorney. He found that Evans had difficulty answering some of the questions posed to him, or at least, noticed his shallow knowledge on certain topics, like the outcome of his case. On cross-examination, Dr. Allen testified that he saw no reason to believe that Evans was malingering—a term used for an intentional suppression of abilities to fabricate symptoms—stating that one of the tests administered to Evans screened for such feigned memory issues.

Dr. Schramm's conclusion that Evans is competent to stand trial was informed by eight separate meetings with the defendant; approximately 45 days of observation by FMC Lexington staff; a "comprehensive review" of trial documents pertaining to this case, (DE 48 at 2-3), Evans' medical records, medical and mental background history, an interview with Evans' wife; concerns relayed from Evans' attorney; three separate psychological tests: (1) the Mini Mental State Examination, 2nd Edition: Standard Version (MMSE-2SV), (2) the Rey 15-Item Test (RFIT) and Recognition Trial, and (3) the Minnesota Multiphasic Personality Inventory-2-Restructured Form (MMPI-2-RF); three structured cognitive assessment tools:

(1) the Revised Competency Assessment Instrument (RCAI); (2) the MacArthur Competence Assessment Tool-Criminal Adjudication (MacCAT-CA); and (3) the Evaluation of Competency to Stand Trial-Revised (ECST-R); monitoring (and listening to) the recorded telephone conversations with his wife, reading any incoming and outgoing emails, and personally observing Evans when he was at the facility; and finally, Dr. Schramm professional experience in conducting approximately sixty evaluations for the Federal Bureau of Prisons, since she began working for them in 2019.

In the course of her career in evaluating competency, Dr. Schramm testified that she has found other defendants incompetent to stand trial on several occasions. In those cases, she observed that those defendants required more time and attention in completing daily living tasks. Here, unlike in those cases, Evans did not require assistance in performing everyday tasks; nor did Evans require the same additional time, guidance, and attention that those defendants required. Further, she noted that during Evans' time in BOP custody, he had consistently been attentive to and maintained his hygiene. She stated that any cognitive decline observed in Evans is within normal range and most likely attributed to his age.

Dr. Schramm testified that Evans' test scores were consistent with those of other defendants found competent. She noted that Evans understood the role of the prosecutor, the judge, and the jury, and that he generally grasped the adversarial nature of court proceedings. Further, Evans was able to recognize the charges against him without difficulty and was reluctant to get into specific details of those charges, as is common with other defendants. She reflected on the *Dusky* factors throughout the proceeding, and testified that she relied heavily on those factors in evaluating the evidence before her and in reaching her conclusion. She indicated there was no reason to believe that Evans was unable to actively participate in his own defense; to her, this conclusion was strengthened by Evans' attention to dates, future-planning abilities, and ability to theorize about his case.

The Court also heard testimony from Dr. Alberto Espay. He similarly opined that Evans was competent to participate in his own defense. Dr. Espay did not personally meet with Evans; nor did he have the opportunity and the benefit of observing Evans in a custodial setting. Dr. Espay based his conclusion on his review of the following data sources: Dr. Allen's report; the neuropsychological results that came from Dr. Allen's office; Dr. Schramm's forensic psychological result, Evans' list of medications, two laboratory results from March and July 2020, a 2015 (MR angiogram) imaging report, and several other clinical progress and exam reports, results, and hospital admission and discharge summaries.

As an expert in the field of neurology, Dr. Espay's testimony was valuable in explaining and comparing the results of Evans' March 2, 2015 brain imaging scan and the most recent scan from October 23, 2020. In 2015, Evans suffered an episode of blurred vision, among other things, sustaining posterior reversible encephalopathy syndrome as a result of two successive motor vehicle accidents. He was eventually admitted to the hospital for two days. Neurological studies further supported the presence of hypertension upon admission. Notably, however, the 2020 MRI suggested that Evans has completely recovered from posterior reversible encephalopathy syndrome. From the medical evidence, Dr. Espay concluded there was sufficient evidence to reflect a mild cognitive impairment (MCI), which predominantly affects Evans' memory and executive dysfunction. He did not see the likelihood of any impairment to his daily living, social/occupational functioning, or any other neurological deficit. He concluded that Evans' cognitive deficits do not reach threshold for dementia.

**II. Analysis**

Pursuant to § 4241, which codified the Supreme Court's *Dusky* decision, a defendant is competent to stand trial if the defendant has "(1) a 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding,' and (2) 'a rational as

well as factual understanding of the proceedings against him.' " *United States v. Dubrule*, 822 F.3d 866, 875 (6th Cir. 2016) (quoting *Dusky v. United States*, 362 U.S. 402 (1960)). Accordingly, a defendant who "lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171 (1975)).

Competency is determined by balancing several factors, including the defendant's past behavior and the medical evidence in the record. *Drope*, 420 U.S. at 178-180; *Dubrule*, 822 F. 3d at 876. Each competency determination should be "tailored to the individualized circumstances of a particular defendant." *United States v. Hood*, 827 F. App'x 524, 529 (6th Cir. 2020) (quoting *Indiana v. Edwards*, 128 S. Ct. 2379, 2380 (2008)). No factor "should be viewed in isolation." *Williams v. Bordenkircher*, 696 F.2d 464, 466 n.1 (6th Cir. 1983). If confronting opposing expert viewpoints, the Court should evaluate each opinion based on factors like the length of the evaluation period, the thoroughness of the examiner's observations, and the expert's credentials and experience in evaluating competency. *Dubrule*, 822 F.3d at 877; *Adams v. Haeberlin*, 404 F. App'x 11, 12 (6th Cir. 2010). Further, the Court should consider the defendant's in-court demeanor and his attorney's representation that he is able to assist in his defense. *United States v. Franklin*, No. 7:19-MJ-2-REW-EBA, 2020 WL 748181, at *5 (E.D. Ky. Feb. 14, 2020).

Mental incompetence is a "high bar to clear." *Hood*, 827 F. App'x at 529 (quoting *United Sates v. Miller*, 531 F.3d 340, 350 (6th Cir. 2008)) (internal citations omitted). Incompetence requires the defendant to exhibit a "deep [ ] breakdown in cognition" so that he lacks the ability to understand the proceedings against him and participate in his own defense. *Id.* (quoting *United States v. Coleman*, 871 F.3d 470, 477 (6th Cir. 2017)). "[E]ven patients with chronic severe mental illness often fall short of the threshold." *Id.*

Applying the relevant legal standards, including the high bar for trial incompetency, the Court concludes the evidence in the record shows that Evans, more likely than not, has "the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense[.]" *Drope*, 420 U.S. at 171.

Several factors call for giving Dr. Schramm's testimony significant weight over that of Dr. Allen's testimony. First, Dr. Schramm's examination was based on more personal interaction, spaced across different days, and supplemented with weeks of evaluation while Evans was in the BOP's custody. This yielded a longitudinal aspect that Dr. Allen's one-off session does not reflect. Further, it is notable to the Court that Dr. Allen did not reference *Dusky* or the federal statutory formulation anywhere in his report, nor in his testimony at the competency hearing.

Dr. Schramm employed testing protocol specific to competency, including guided interviews which directly probed Evans' views, knowledge, attitudes, and conceptions on multiple competency elements, all which yielded an opinion in favor of competency. Dr. Schramm emphasized that Evans had no difficulty in the interviews or in completing any of the other testing components. Overall, the Court finds Dr. Schramm's report, and her testimony at the hearing, more reliable and well-founded.

The Court also considers Evans' demeanor during the competency hearing, as well as his general demeanor before the Court thus far. At the hearing, the Court observed Evans demonstrably frustrated from the testimony of Dr. Schramm; this indicates that Evans understands the evidence presented against him and the conclusions lodged in support of Dr. Schramm's finding of competency. The conversations between Evans and his wife further suggests Evans' awareness to the current proceedings, highlighting his ability to coach (and prepare) his wife for any foreseeable telephone calls from Dr. Schramm.

Evans' charges are indicative of someone with perceptive abilities; someone who is successfully able to understand, discern, and conceptualize abstract conceptions. His clientele is indicative of his ability to effectively maintain relationships with others and engage in conversations requiring some level of comfort with numeracy, typically embedded in someone from the finance community. None of this is the behavior of someone who is incompetent to stand trial.

Evans' ability to theorize defenses does not correlate with someone who does not grasp the nature of court proceedings and cannot actively participate in his own defense. Little evidence supports the notion that Evans does not presently understand court proceedings and is is unable to participate in his own defense. Thus, the court ultimately finds the weight of the evidence supports the conclusion that Evans is competent and able to stand trial at this time. Although the defendant may indeed have some defects, the court finds that he does have a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402.

### III. Conclusion

For the reasons above, the Court FINDS the Defendant, William Evans, COMPETENT to face further proceedings.

Dated May 10, 2021

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY